[Cite as *State ex rel. Foster v. Brown Cty. Health Dept.*, 2017-Ohio-8430.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO EX REL. ROBERT FOSTER, et al., | : | |
| | : | CASE NO. CA2016-12-025 |
| Appellants-Relators, | : | O P I N I O N |
| | | 11/6/2017 |
| - vs - | : | |
| | : | |
| BROWN COUNTY HEALTH DEPARTMENT, et al., | : | |
| Appellees-Respondents. | : | |

CIVIL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. 20140746

Robert M. Smyth, 250 East Fifth Street, Suite 1500, Cincinnati, Ohio 45202, for appellants-relators

Zachary A. Corbin, Brown County Prosecuting Attorney, Mary McMullen, 510 East State Street, Suite 2, Georgetown, Ohio 45121, for appellees-respondents

**S. POWELL, J.**

{¶ 1}  Appellants-relators, the state of Ohio ex rel. Robert Foster, Robert Foster, and Judy Foster (collectively, the "Fosters"), appeal from the decision of the Brown County Court of Common Pleas granting summary judgment to appellees-respondents, the Brown County Health Department and Brown County Health Commissioner, Harold "Rusty" Vermillion

(collectively, "Health Department"), on the Fosters' amended complaint seeking a writ of mandamus in a suit involving the permitting and installation of a septic tank on the Fosters' Brown County property. For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} This matter involves a dispute spanning over two decades regarding the permitting and installation of a septic tank on the Fosters' property known as Lot 4 of the Tart Subdivision, Kendall Road, Winchester, Jackson Township, Brown County, Ohio. According to the record in this case, at all times relevant, the permitting and installation of a septic tank in Brown County involves a two-step process that requires the issuance of two separate permits: (1) a "septic permit" to allow for the inspection of the property and soil to determine what kind of septic system can be installed on the property, a permit that has also been referred to as a "layout," "on-site application," "septic system layout," "site permit," "site approval," "system evaluation," "site evaluation form," and "site evaluation permit;" and, (2) an "installation permit" that approves the actual installation of the approved septic system. Mr. Foster was familiar with this two-step process since he was a licensed contractor and registered septic system installer with Brown County who installed home septic systems during his time as the owner of a manufactured modular home dealership in Brown County.

{¶ 3} In September of 1996, an article was published in the Brown County Press, a local newspaper, reminding all property buyers, whether home owners, realtors, or investors, to obtain a "septic permit" from the Health Department before beginning any development on property to ensure the property was approved for a septic system. The article further stated that these permits "do not expire and are transferable with the property." However, when asked during his deposition if either the septic permit or the installation permit were so-called "lifetime permits" that never expired as the Fosters claimed, Vermillion, the Health Commissioner, testified: "I have no idea who wrote the article, but it's not correct." Vermillion

further testified:

> My testimony is that there is no lifetime permit, either one of these things. They all expire at some point if they're not utilized, either through a change in law or an expiration date, which in most instances listed on the face of the document.

Explaining septic permits further, Vermillion testified:

> Those expire – those evaluations which you're calling a site permit, those expire when the rules or the law changes in Columbus [referring to the Ohio Department of Health]. The board of health can't expire – they can't supersede the revised code.

Concluding, Vermillion testified:

> [T]he layout, what you're referring to as septic permits, would have an expiration date which is dictated by a change in the sewage regulations which is changed at the state level.

{¶ 4} On December 30, 1996, the Fosters filed an application for a septic permit described in the September 1996 newspaper article.[1] Thereafter, on January 7, 1997, the Health Department issued the Fosters a septic permit that included comments from the individual who inspected the property, Jerry Waits, approving a "1500 gal septic tank 900 feet of leach lines with a curtain drain." The record indicates this type of septic system is also referred to as a "conventional septic system." It is undisputed that the permit issued to the Fosters on January 7, 1997 did not contain an expiration date on the face of the document. However, the septic permit issued to the Fosters did include the following notice:

> Topography is poor for septic in Brown County. It will be the owner's responsibility to install a system to meet the Brown County Health Department's regulations and the Ohio Revised Code.

{¶ 5} Over seven years later, in October of 2004, the Fosters completed building a

---

1. The record indicates the permit issued by the Health Department on January 7, 1997 was actually issued to Mr. Foster and his now ex-wife, Tracy. For purposes of this appeal, and to avoid any unnecessary confusion, we will continue to refer to Mr. Foster and his now ex-wife as the "Fosters" for any further distinction is nothing more than a distinction without a difference.

- 3 -

home on their property. The Fosters, however, did not apply for an installation permit to install the previously approved septic system. As a result, no septic system was installed on the property.

{¶ 6} On December 3, 2004, Stephen Dick, the Health Department's Director of Environmental Health, sent a letter to the Ohio Department of Health ("ODH") inquiring about when "installation permits and site evaluations should expire." When asked during his deposition why he sent this letter, Dick testified:

> Well, we've had a history of systems not working in our county, and it's because of soils like Mr. Foster has on Kendall Road that are not conducive to leach lines. So we were wanting to make sure that the system that the homeowner put in moving forward is the right system for the soil type.

Dick further testified:

> Because up until that point we were honoring those older permits, but we knew that they were not laid out for the proper soil type. So we wanted to be able to issue permits to homeowners that we know are going to work.

{¶ 7} On January 6, 2005, an administrator with ODH answered Dick by letter advising him that according to the Ohio Administrative Code, installation permits expire after one year. However, as it related to septic permits, which the administrator referred to as "site evaluation forms" or "site evaluation permits," the administrator advised Dick the following:

> Site evaluations forms or permits are not addressed in the current household sewage disposal rules. We would recommend that an expiration date be incorporated through the Brown County Health Department rules or policies on site evaluations. If the site evaluations are allowed to expire, based on time limits, then the health department will be able to keep all permits and approved designs current. Establishing expiration dates will also streamline the administrative process.

{¶ 8} On January 12, 2005, the Brown County Board of Health ("Board of Health") held a board meeting, during which it discussed the letter received from the ODH administrator. Following this discussion, the Board of Health passed a resolution revoking all

septic permits issued prior to June 1, 1999 if the permit holder did not obtain an installation permit within six months. Although septic system installers registered with Brown County were notified of this change, including Mr. Foster who, as noted above, was a registered septic system installer in Brown County, it is undisputed that no notice was ever given to the individual holders of the affected septic permits.

{¶ 9} Due to this newly enacted resolution, on May 27, 2005, the Fosters obtained an installation permit from the Health Department authorizing them to install the septic system previously approved as part of the septic permit issued to them on January 7, 1997. The Fosters, however, did not install the septic system within the year and the installation permit expired on May 28, 2006. According to Mr. Foster's deposition testimony, the Fosters did not install the previously approved septic system due to their then financial constraints.

{¶ 10} On August 31, 2006, the Fosters submitted to the Health Department a "Household Wastewater System Evaluation Application," or, more simply, an updated application for a new septic permit. However, unlike previous applications for a septic permit, this application included an explicit notification that the permit would expire two years from the date issued.

{¶ 11} Several weeks later, on September 20, 2006, the Health Department approved the Fosters' system evaluation application and issued them a septic permit to install a septic system on their property. As part of this septic permit, the individual who inspected the property, Dick, commented:

> The Brown County Health Department strongly recommends that a mound system be install for this lot. This is due to the shallow depth to mottles and fragipan. However, the homeowner can go against this recommendation to install a 500 gpd aerator into 900' of leach line. The leach field will need to have a curtain drain around it and down every third line. The installer permit will need to be purchased before 12-29-06 in order to have this system.

Although receiving this new septic permit, it is undisputed the Fosters never obtained an installation permit for the approved septic system due to their continuing financial constraints.

{¶ 12} On July 10, 2007, and in compliance with the General Assembly enactment of Am.Sub.H.B. 119 effective July 2, 2007, the Board of Health passed, as an emergency measure, a resolution that required "vertical separation distances from limiting conditions and soil absorption requirements for construction and operation of onsite [household septic systems] in Brown County * * *." Specifically, this resolution required, among other things, "[s]oil absorption components" to "maintain a vertical separation distance of at least two feet * * *." In explaining this resolution further, Dick, the Health Department's Director of Environmental Health, provided deposition testimony that the resolution was to ensure "that if somebody downstream has a creek where this is going into, that that effluent [bacteria, viruses, nitrogen, phosphates, and suspended solids] is being treated properly."

{¶ 13} On June 24, 2013, nearly six years after the applicable resolution was passed by the Board of Health, the Fosters filed with the Health Department an "Application for Site Review – Sewage Treatment System," which, again, was nothing more than another updated application for a septic permit. The application was subsequently approved and a septic permit was issued to the Fosters on July 15, 2013. As part of this permit, the inspector, Dick, commented that due to the nature of the soil on the property, and based on resolution passed by the Board of Health in response to the Generally Assembly's passage of new rules and regulations regarding septic systems contained in Am.Sub.H.B. 119, the Fosters' property would now require the installation of a "mound system." Specifically, Dick commented:

> The limiting layer for this lot rangers from 17" – 20". This lot will require a mound system. The home was already on the lot. Slope of the lot will limit areas where the mound system can be installed. An installer permit will be required.

{¶ 14} On November 7, 2013, the Health Department issued an installation permit to the Fosters permitting them to install the previously approved mound system on their property. The installation of the approved mound system required the Fosters to purchase 86 tons of sand, sand which then had to be approved during an inspection by the Health Department before the mound system could be installed. According to Dick's testimony, prior to the Fosters purchasing the necessary sand, he and Mr. Foster had a meeting in his office where he informed Mr. Foster that "for the type of mound you're putting in, here's the sand we approve and here's where we get it, get it from them."

{¶ 15} On November 15, 2013, an inspection was conducted on the Fosters' property. According to Dick, who conducted the inspection, the sand purchased by the Fosters was "the wrong sand. Homeowners told to replace sand." Specifically, as Dick testified during his deposition:

> So I go out to the job and the sand doesn't look right. It doesn't look like the color it should be. So I asked him for sand tickets. He produces them and it's not from the place that we're supposed to get them from. So there we are.

Not sure how to proceed, Dick testified he and Mr. Foster had "some back and forth about that" before ultimately agreeing that if the sand purchased by the Fosters passed a "sieve analysis" and a "jar test" that Dick would "pass the sand and we'll move on."

{¶ 16} Seemingly coming to an agreement, it is undisputed that the sand purchased by the Fosters passed the "sieve analysis." However, as it relates to the "jar test," Dick testified the sand was "way too dirty" in that it had "not been properly washed to meet what we require for a mound system." According to Dick, "[t]here's only a couple of things that really will screw up a mound system and dirty sand is one of them." In conducting the "jar test," however, Dick testified that he did not use any tools to measure the sediment within the jar, only that he used his eye to tell that it was above the maximum sixteenth of an inch. As Dick

testified, "I know a sixteenth of an inch when I see it and that was way above it." Dick also testified that "it was obvious it was more than a sixteenth of an inch." After concluding the sand had not passed the "jar test," Dick failed the sand and informed the Fosters that they were prohibited from moving forward with the installation of the mound system on their property.

{¶ 17} On July 8, 2014 and again on August 5, 2014, the Fosters filed with the Health Department requests for a variance; (1) the first of which requested a variance to install an aeration system with 350 feet of leach lines as recommended by Dan Michaels, a "soil scientist" the Fosters hired to conduct a site evaluation of their property; (2) whereas the second request asked the Health Department to honor the so-called "lifetime permit" the Fosters received on January 7, 2007 to "allow the septic as written to be installed." The Health Department subsequently denied both of the Fosters' requests for a variance.

{¶ 18} Also on July 8, 2014, the Fosters filed a public records request with the Health Department requesting "access to (or a copy of)" the following records:

> "[A]ll records pertaining to all sewage permits approved and installed, plus permits pulled but not installed, of all mound, and Millennium septic systems from January 1, 2005 to July 8, 2014." This request also included a request for all repair information for each system or permit.
>
> Information pertaining to "change from Lifetime septic permit to 2 year limited time permit," including meeting records, public announcements, public or private discussion and meetings and response to time change and include date and name of paper published in announcing limited time change.
>
> "[A]ny and all records pertaining to the implementation of mound systems by the Brown County Board of Health, public hearing dates, approval dates, etc."

{¶ 19} On July 17, 2014, the Health Commissioner, Vermillion, sent a letter to the Fosters explaining that "[a]lthough your requests are overly broad in some instances, we will make every reasonable effort to provide, for your review, those documents that appear to

meet your review." In later explaining this response during his deposition, Vermillion testified the Board did not maintain its records based on the type of septic system (e.g., mound or Millennium), but sequentially. In turn, as it relates to the records requested by the Fosters, Vermillion testified the records could only be searched generically by name, date, address, and permit number. As Vermillion testified, "[t]hese are generic tags, they're not Millennium or mound systems or conventional systems. It's just not kept that way."

{¶ 20} Dick also testified about how the Health Department maintains its records in regards to septic and installation permits, specifically on how those records can be searched. As Dick testified during his deposition:

> So when you ask us – if you come in and say – you gave an example of the resident, Mr. Smith, find me this permit. We're going to say – we're going to take your name and plug that in. We're going to take the address and we're going to plug that in. We're going to take the street number – or the street name and we're going to plug that in, assuming we didn't find it in the other two.
>
> And if we can't find it in these, then we're going to tell you – if you don't know the permit number, which that's the easiest way to find it, we're going to say, try to give us the years that you think this was put in. And then we'll go back and hand search it within those years.
>
> But just to come in and say, I want all the mound systems that's been done since 2001, we would have to physically go through each file, pull it out, look at it, see if it's for a mound system. If not, put it back, pull out the next one, and that would be – we don't have the staff for that.

Continuing, Dick testified the Fosters' public records request was not reasonable and "would be very hard for us to do."

{¶ 21} On July 21, 2014, the Fosters responded to Vermillion's letter detailing at length the requested documents they wanted "access to (or a copy of)," which, once again, included all records regarding mound and Millennium septic systems in the Health Department's possession. In response, on July 28, 2014, Vermillion e-mailed Mrs. Foster the following:

The records you wish to review are available here at the office and will be accessible to you when you come in.

Due to limited working space we can only accommodate 2 persons at any one time during your records review. Please note that should you wish to come in on Tuesdays, we will be better able to deal with your requests after 10:00 AM.

If you have any questions please call at your convenience.

{¶ 22} Although the Fosters were given access to the requested records, Mr. Foster testified at his deposition that he did not go to the Health Department to review the records because "[w]e did not want to go into a hostile environment to make copies." Mrs. Foster also testified at her deposition that she did not go to the Health Department to review the records because the Health Department was "hostile," "not very friendly," and "[t]hey don't ask to help you." On the other hand, when asked about the Fosters' refusal to go to the Health Department to review the requested records, Vermillion testified:

I can't – I can't force them to come in and review the documents. We provided them with what we had available electronically, which was – and was practical to copy, and that's what we did. We gave them access to the minutes. I told them they were welcome to come at any time, we would provide them an area to work in and give them all the documents. They could then go through them, choose the ones they wanted copied and we would copy them. We have a small office. It's not practical to copy every document that we have in our possession.

{¶ 23} On November 4, 2014, the Fosters filed a complaint for a writ of mandamus against the Health Department alleging two causes of action arguing the Health Department failed to comply with the law in regards to their public records request, and that the Health Department must be made to honor the so-called "lifetime permit" that was issued to them on January 7, 1997. By agreed entry, the parties later agreed to allow the Fosters to amend their complaint for a writ of mandamus, which they did on April 30, 2015, to include seven causes of action regarding the validity of the various permits issued to them by the Health Department and their subsequent public records request. This included claims alleging a

- 10 -

violation of their due process rights and an equal protection claim, among others.

{¶ 24} On September 2, 2016, following lengthy discovery, the Fosters moved for partial summary judgment. That same date, the Health Department filed their own motion for summary judgment. After taking the matter under advisement, a trial court magistrate issued a decision granting the Health Department's motion for summary judgment on all issues but one; specifically, that "the employees of the Brown County Board of Health are hereby ordered to conduct inspections of premises and materials by using actual measurements." The Fosters then filed objections to the magistrate's decision, which the trial court denied on November 14, 2016, thereby approving and adopting the magistrate's decision in full.

{¶ 25} The Fosters now appeal from the trial court's decision, raising ten assignments of error for review. For ease of discussion, the Fosters' assignments of error will be addressed out of order and combined where appropriate.

### Stipulation of Fact: January 7, 1997 Septic Permit is Still Valid

{¶ 26} As noted above, the Health Department issued a septic permit to the Fosters on January 7, 1997 approving for the Fosters' property a "1500 gal septic tank 900 feet of leach lines with a curtain drain." In issuing its decision, the trial court determined that the Board of Health's attempt to revoke, through a resolution passed on January 12, 2005, all septic permits issued prior to June 1, 1999 if the permit holder did not obtain an installation permit within six months, was invalid since the actual permit holder effected by that resolution was not provided with notice. The Health Department did not appeal from that decision and has essentially stipulated to that fact on appeal. Therefore, while we may disagree, for purposes of this appeal, we will presume the January 7, 1997 septic permit issued to the Fosters is still a valid septic permit despite it being now more than two-decades old.

### Standard of Review: Writ of Mandamus

{¶ 27} Mandamus is appropriate only where the appellant shows by plain, clear, and

convincing evidence: "(1) that appellant has a clear legal right to the relief requested; (2) that appellee is under a clear legal duty to perform the requested act; and (3) that appellant has no plain and adequate remedy in the ordinary course of law." *State ex. rel. Ney v. Niehaus*, 33 Ohio St.3d 118, 118-119 (1987), citing *State ex rel. Middletown Bd. of Edn. v. Butler Cty. Budget Comm.*, 31 Ohio St. 3d 251, 253 (1987). This court reviews a trial court's decision to deny a request for a writ of mandamus under an abuse of discretion standard. *State ex rel. River City Capital v. Clermont Cty. Bd. of Commrs.*, Clermont No. CA2010-07-051, 2011-Ohio-4039, ¶ 23. An abuse of discretion is more than an error of judgment; it means the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Whittle v. Davis*, 12th Dist. Butler No. CA2012-08-169, 2013-Ohio-1950, ¶ 13.

**Standard of Review: Motion for Summary Judgment**

**{¶ 28}** As noted above, except for one issue not related to this appeal, the trial court granted summary judgment to the Health Department on the Fosters' complaint for a writ of mandamus. Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial. *Roberts v. RMB Ents., Inc.*, 197 Ohio App.3d 435, 2011-Ohio-6223, ¶ 6 (12th Dist.). On appeal, a trial court's decision granting summary judgment is reviewed de novo. *Moody v. Pilot Travel Ctrs., L.L.C.*, 12th Dist. Butler No. CA2011-07-141, 2012-Ohio-1478, ¶ 7, citing *Burgess v. Tackas*, 125 Ohio App.3d 294, 296 (8th Dist.1998). In applying the de novo standard, the appellate court is required to "'us[e] the same standard that the trial court should have used, and * * * examine the evidence to determine whether as a matter of law no genuine issues exist for trial.'" *Bravard v. Curran*, 155 Ohio App.3d 713, 2004-Ohio-181, ¶ 9 (12th Dist.), quoting *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383 (8th Dist.1997).

**{¶ 29}** Pursuant to Civ.R. 56, a trial court may grant summary judgment only when: (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as

a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party. *BAC Home Loans Servicing, L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 17 (12th Dist.). The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Touhey v. Ed's Tree & Turf, L.L.C.*, 194 Ohio App.3d 800, 2011-Ohio-3432, ¶ 7 (12th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Once this burden is met, the nonmoving party must then present evidence to show that there is some issue of material fact yet remaining for the trial court to resolve. *Smedley v. Discount Drug Mart, Inc.*, 190 Ohio App.3d 684, 2010-Ohio-5665, ¶ 11 (12th Dist.). In determining whether a genuine issue of material fact exists, the evidence must be construed in the nonmoving party's favor. *Barich v. Scheidler Med. Group, L.L.C.*, 12th Dist. Butler No. CA2015-01-004, 2015-Ohio-4446, ¶ 9, citing *Walters v. Middletown Properties Co.*, 12th Dist. Butler No. CA2001-10-249, 2002-Ohio-3730, ¶ 10.

**The Fosters' Second Assignment of Error**

{¶ 30} Assignment of Error No. 2:

{¶ 31} THE TRIAL COURT ERRED AS A MATTER OF LAW BY CLASSIFYING THE FOSTERS' PERMITS AS "SITE PERMITS."

{¶ 32} In their second assignment of error, the Fosters argue the trial court erred by classifying their various permits as "site permits." In support of this claim, the Fosters argue that their various permits should have instead been classified as "septic system installation permits," "septic system permits," or "household sewage treatment system permits." In other words, the Fosters argue that their various permits serve both purposes as a "septic permit" and as an "installation permit," thereby necessitating only one permit to install their desired septic system on their property. We disagree.

{¶ 33} As noted above, regardless of the name given, the record without question

supports a finding that the permitting and installation of a septic tank in Brown County involves a two-step process that requires the issuance of two separate permits: (1) a "septic permit" to allow for the inspection of the property and soil to determine what kind of septic system can be installed on the property, a permit that has also been referred to as a "layout," "on-site application," "septic system layout," "site permit," "site approval," "system evaluation," "site evaluation form," or "site evaluation permit;" and, (2) an "installation permit" that approves the actual installation of the approved septic system.

{¶ 34} With the exception of possibly Mrs. Foster, the record firmly establishes that this two-step process was well known to everyone involved, including the Fosters' trial counsel. What is more disturbing, however, is the Fosters' claim that it is "unrefuted" that Vermillion, the Health Commissioner, testified during his deposition that the septic permit issued to them on January 7, 1997 provided them with lifetime authorization to install the septic system on their property approved by that septic permit; namely, a "1500 gal septic tank 900 feet of leach lines with a curtain drain," without also obtaining the necessary installation permit. Such an argument is false and easily disproven by a simple reading of the record. Contrary to the Fosters' claim otherwise, Vermillion actually testified when being questioned by the Fosters' trial counsel as follows:

> Q: So is it fair to say a layout is one requirement in order to obtain the septic permit?
>
> A: Yes.
>
> Q: And what is a permit?
>
> A: The permit is permission to install a system.
>
> Q: Okay. So a septic permit is a permission by the county health department, or board, to install a septic system on a property, correct?
>
> A: Yes.

Q: And there is a fee to obtain a septic permit?

A: Yes.

Q: *And the septic permit is not the only permit required to install a septic system, correct?*

A: *That's correct.*

Q: *There are other things that need to be done, correct?*

A: *Yes.*

(Emphasis added.)

{¶ 35} Vermillion also explicitly testified that the process of permitting and installing a septic tank in Brown County is "a two-step process, it's not one step," that it has "always been a two-step process," and that no matter what "you call it, it was a two-step process." The Fosters' attempt to mischaracterize the record before this court is unfounded and inappropriate. Therefore, finding no error in the trial court's decision to refer to the septic permit issued to the Fosters on January 7, 1997 as a "site permit," which, we again note, was just one of many names used to describe what this court will refer to as a "septic permit" by both parties, the Fosters' second assignment of error is without merit and overruled.

**The Fosters' First Assignment of Error**

{¶ 36} Assignment of Error No. 1:

{¶ 37} THE TRIAL COURT ERRED AS A MATTER OF LAW BY RULING IN FAVOR OF THE FOSTERS ON THEIR "FIFTH CAUSE OF ACTION" BUT SIMULTANEOUSLY DENYING THE FOSTERS' SUMMARY JUDGMENT AND GRANT SUMMARY JUDGMENT TO BROWN COUNTY HEALTH DEPARTMENT.

{¶ 38} In their first assignment of error, the Fosters argue the trial court erred by denying their claim seeking declaratory relief that the Board of Health's attempt to revoke their January 7, 1997 septic permit through a resolution passed on January 12, 2005 was

"unconstitutional and void." However, as noted above, the trial court actually did find the Board of Health's attempts to revoke that septic permit, as well as any other outstanding septic permit issued prior to June 1, 1999, invalid since the actual permit holder effected by that resolution was not provided with notice. The Health Department did not appeal from this issue, and, as we stated previously, has essentially stipulated to that fact on appeal.

{¶ 39} That said, the Fosters claim that because the trial court found their January 7, 1997 septic permit is still valid that they are entitled to summary judgment in their favor, thereby authorizing them to install the septic system approved by that permit, which, as noted above, was a "1500 gal septic tank 900 feet of leach lines with a curtain drain." The Fosters' claim lacks merit as they conveniently ignore the fact that, as we discussed above, the permitting and installation of a septic tank in Brown County involves a two-step process that requires the issuance of two separate permits; a septic permit *and* an installation permit.

{¶ 40} Although their January 7, 1997 septic permit may still be valid due to a procedural defect by the Board of Health in failing to provide proper notice to affected septic permit holders, the Fosters are still required to obtain an installation permit from the Health Department that authorizes them to install the previously approved septic system on their property, something the Fosters actually did on May 27, 2005 before letting that permit expire the following year. Without an installation permit that authorizes the installation of that septic system, the Fosters are precluded from installing the septic system originally approved for their property by the septic permit issued to them by the Health Department on January 7, 1997. The Fosters' first assignment of error is therefore without merit and overruled.

**The Fosters' Third, Fourth, Fifth, and Sixth Assignments of Error**

{¶ 41} Assignment of Error No. 3:

{¶ 42} THE TRIAL COURT ERRED AS A MATTER OF LAW BY RULING IN FAVOR OF THE FOSTERS ON THEIR "SECOND CAUSE OF ACTION" BUT SIMULTANEOUSLY

DENYING THE FOSTERS' SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT TO BROWN COUNTY HEALTH DEPARTMENT.

{¶ 43} Assignment of Error No. 4:

{¶ 44} THE TRIAL COURT ERRED AS A MATTER OF LAW BY RULING IN FAVOR OF THE FOSTERS ON THEIR "THIRD CAUSE OF ACTION" BUT SIMULTANEOUSLY DENYING THE FOSTERS' SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT TO BROWN COUNTY HEALTH DEPARTMENT.

{¶ 45} Assignment of Error No. 5:

{¶ 46} THE TRIAL COURT ERRED AS A MATTER OF LAW BY RULING IN FAVOR OF THE FOSTERS ON THEIR "FOURTH CAUSE OF ACTION" BUT SIMULTANEOUSLY DENYING THE FOSTERS' SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT TO BROWN COUNTY HEALTH DEPARTMENT.

{¶ 47} Assignment of Error No. 6:

{¶ 48} THE TRIAL COURT ERRED AS A MATTER OF LAW BY CONCLUDING THAT THERE WAS NO CLEAR LEGAL DUTY FOR THE BROWN COUNTY HEALTH DEPARTMENT TO ALLOW THE FOSTERS TO INSTALL THEIR PROPERLY PERMITTED SEPTIC SYSTEM.

{¶ 49} In their third, fourth, fifth, and sixth assignments of error, the Fosters argue the trial court erred by denying their motion for summary judgment since the Board of Health violated their substantive due process rights, procedural due process rights, the Ohio Administrative Code, and the Ohio Revised Code, when it enacted the January 12, 2005 resolution revoking their January 7, 1997 septic permit, and all other outstanding septic permits issued prior to June 1, 1999, thus rendering that permit still valid. Again, this issue is not in dispute as the Health Department essentially stipulated to that fact on appeal.

{¶ 50} However, as stated previously, the permitting and installation of a septic tank in

Brown County involves a two-step process that requires the issuance of two separate permits; a septic permit *and* an installation permit. Therefore, although the Fosters may still hold a valid septic permit, without an installation permit that authorizes the installation of that septic system, the Fosters are precluded from installing the septic system originally approved for their property by the septic permit issued to them by the Health Department on January 7, 1997. To hold otherwise would obfuscate the two-step procedure necessary for the permitting and installation of a septic system in Brown County, a procedure that Mr. Foster was certainly aware of considering he had been a licensed contractor and registered septic system installer with Brown County who installed home septic systems during his time as an owner of a manufactured modular home dealership. Accordingly, the Fosters' third, fourth, fifth, and sixth assignments of error are without merit and overruled.

**The Fosters' Seventh Assignment of Error**

{¶ 51} Assignment of Error No. 7:

{¶ 52} THE TRIAL COURT ERRED AS A MATTER OF LAW BY CONCLUDING THAT THERE WAS NO CLEAR LEGAL DUTY FOR THE BROWN COUNTY HEALTH DEPARTMENT TO GRANT A VARIANCE TO THE FOSTERS FOR THEIR PROPOSED SEPTIC SYSTEM.

{¶ 53} In their seventh assignment of error, the Fosters argue the trial court erred by denying them summary judgment upon finding there was no clear legal duty for the Board of Health to grant either of their two requests for a variance filed with the Board on July 8 and August 5, 2014, respectively. In support of this claim, the Fosters cite to Ohio Adm.Code 3701-29-22(A), a provision that outlines when a septic system variance may be granted. As that rule states:

> A board of health *may* grant a variance from the requirements of this chapter when a person has made written application for a variance to the board requesting the variance from a specified

rule or rules and the applicant shows that because of practical difficulties, or other special conditions, compliance with this chapter will cause unusual and unnecessary hardship.

(Emphasis added.)

{¶ 54} The Fosters state that this provision mandates the Board of Health to grant them a variance due to the "special conditions" presented in this case. However, as a simple reading of the cited code section reveals, due to the use of the permissive word "may," the Board of Health was not required to grant either of the two variances requested by the Fosters. "Use of the term 'may' should be construed as permissive, not mandatory." *State ex rel. Shaughnessy v. City of Cleveland*, 149 Ohio St.3d 612, 2016-Ohio-8447, ¶ 49, citing *In re Application of Ormet Primary Aluminum Corp.*, 129 Ohio St.3d 9, 2011-Ohio-2377 ¶ 17. This is true despite the fact that the septic permit issued to the Fosters on January 7, 1997 remains valid for, once again, it is clear that there is a two-step procedure for the permitting and installation of a septic system in Brown County.

{¶ 55} The Fosters also allege that granting them either of their requested variances would not defeat the spirt and general intent of the Administrative Code. We disagree since allowing the Fosters to install a septic system that does not meet the current standards promulgated by the Health Department, the Ohio Administrative Code, and the Ohio Revised Code would do precisely that. Again, as Dick, the Health Department's Director of Environmental Health explicitly testified, the rules and regulations are put in place to ensure "that if somebody downstream has a creek where this is going into, that that effluent [bacteria, viruses, nitrogen, phosphates, and suspended solids] is being treated properly." Therefore, because the Board of Health was not required to grant either of the Fosters' two requests for a variance as the Fosters now suggest, we can find no error in the trial court's decision denying the Fosters' motion for summary judgment on this issue. Accordingly, the Fosters' seventh assignment of error is without merit and overruled.

**The Fosters' Eighth Assignment of Error**

{¶ 56} Assignment of Error No. 8:

{¶ 57} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO BROWN COUNTY HEALTH DEPARTMENT ON THE FOSTERS' "FIRST CAUSE OF ACTION" – VIOLATION OF THE FOSTERS' RIGHT TO EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶ 58} In their eighth assignment of error, the Fosters argue the trial court erred by denying them summary judgment on their equal protection claim upon finding their neighbor was authorized to "modify a non-compliant, undersized septic leach line after his previous home was razed and a much larger one put in its place." However, just as the trial court found, unlike their neighbor, who was merely expanding an existing septic system that was already installed on his property, the Fosters "had no system in place and were proposing to install a totally new system." The Fosters and their neighbor are not individuals who are similarly situated so as to impact the guarantees of equal protection. "[T]here is no requirement of equal treatment between differently situated persons." *Home Depot U.S.A., Inc. v. Levin*, 121 Ohio St.3d 482, 2009-Ohio-1431, ¶ 19, citing *GTE North, Inc. v. Zaino*, 96 Ohio St.3d 9, 2002-Ohio-2984, ¶ 22 ("the Equal Protection Clause does not require things which are different in fact * * * to be treated in law as though they were the same"). Therefore, because we can find no error in the trial court's decision, the Fosters' eighth assignment of error is without merit and overruled.

**The Fosters' Ninth Assignment of Error**

{¶ 59} Assignment of Error No. 9:

{¶ 60} THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THAT THE BROWN COUNTY HEALTH DEPARTMENT WERE IMMUNE FROM AN ACTION FOR DAMAGES PER R.C. 2744.03(A)(2).

{¶ 61} In their ninth assignment of error, the Fosters argue the trial court erred by denying their summary judgment motion finding the Health Department, through the actions of the Board of Health, was entitled to immunity pursuant to R.C. Chapter 2744. We disagree. "The powers of a board of health are quasi-judicial in nature." *Fincham v. Geauga Cty. Bd. of Health*, 11th Dist. Geauga No. 2010-G-3001, 2011-Ohio-5338, ¶ 62. No exception to that immunity as provided for by R.C. 2744.02(B)(2) applies to the case at bar. Therefore, the trial court did not err by finding the Health Department was immune from liability pursuant to R.C. Chapter 2744. Accordingly, the Fosters' ninth assignment of error is without merit and overruled.

**The Fosters' Tenth Assignment of Error**

{¶ 62} Assignment of Error No. 10:

{¶ 63} THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING BROWN COUNTY HEALTH DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT ON THE FOSTERS' PUBLIC RECORDS CLAIMS.

{¶ 64} In their tenth assignment of error, the Fosters argue the trial court erred by denying their summary judgment motion upon finding the Health Department had not violated any law regarding their public records request. We again disagree for the record is clear that the Fosters were given free access to the requested documents in the possession of the Health Department during its regular business hours, but nevertheless *voluntarily* choose not to review the requested documents when given the opportunity to do so. The Health Department fully complied with the law regarding the Fosters' public records request. *See* R.C. 149.43(B)(1) ("all public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours"). The fact that the Fosters did not receive and/or review the documents at issue when given the opportunity to do so can be attributed to themselves alone. This is true

despite the fact that the Fosters believed the Health Department was "hostile" and "not very friendly" to them. Therefore, finding no error in the trial court's decision, the Fosters' tenth assignment of error is overruled.

{¶ 65} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.