[Cite as *State ex rel. Solid Rock Ministries Internatl. v. Monroe*, 2022-Ohio-431.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO EX REL. SOLID ROCK MINISTRIES INTERNATIONAL, et al., | : | CASE NO. CA2021-04-035 |
| Appellees, | : | O P I N I O N<br>2/14/2022 |
| | : | |
| - vs - | : | |
| | : | |
| CITY OF MONROE, | : | |
| Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19-CV-92927

Chilson Law Office, and Mark R. Chilson and Lauren L. Clouse, for appellees.

Surdyk, Dowd & Turner Co., L.P.A., and Jeffrey C. Turner and Dawn M. Frick, for appellant.

**M. POWELL, J.**

{¶ 1} Appellant, the city of Monroe, Ohio ("the City"), appeals a decision of the Warren County Court of Common Pleas granting appellees, Solid Rock Ministries International ("Solid Rock") and Lawrence Bishop II ("Bishop"), a writ of mandamus compelling the City to issue violation notices to Benedict Enterprises, Inc. ("BEI") for non-

compliance with the City's flood regulations.

Facts and Procedure

{¶ 2} Solid Rock is a religious organization that owns property located at 903 Union Road in Monroe. Bishop is the pastor of Solid Rock and lives on a farm located at 1173 Union Road in Monroe. Both properties are adjacent to and east of Interstate Highway 75 ("I-75"). BEI owns property in Monroe, adjacent to and west of I-75. As pertinent to this appeal, Shaker Creek, a tributary of Dicks Creek and the Great Miami River, runs from east to west between Solid Rock's and Bishop's properties, and crosses through BEI's property. Bishop's property borders the north side of Shaker Creek; Solid Rock is located on the south side of Shaker Creek.

{¶ 3} Portions of BEI's property are in a FEMA-designated floodway and floodplain. A floodway is the channel of a watercourse that is reserved for the safe passage of the base flood discharge. It is typically characterized by dangerous flood flows, including high velocities, debris, potential impacts, and erosive forces. A floodplain includes the floodway and the adjacent land areas and is designed to allow flood water to naturally and safely disperse when water is overflowing from the floodway.

{¶ 4} FEMA administers the floodplain pursuant to the National Flood Insurance Program. The City participates in the program. In 1991, the City adopted Monroe Codified Ordinance ("MCO") Chapter 1446 – Flood Damage Reduction to regulate the floodway and floodplain. MCO Chapter 1446 generally contains provisions regulating development, alterations, encroachments, construction, and the like in the floodplain to ensure they do not increase flood levels during the occurrence of a base flood discharge.

{¶ 5} Prior to 2017, Solid Rock's and Bishop's properties did not experience flooding. After experiencing several flooding incidents beginning in July 2017, Solid Rock discovered that BEI had installed a culvert pipe across Shaker Creek within the floodway

between 2015 and 2016 to allow farm equipment to access agricultural fields located on the north side of the creek. BEI did not obtain a floodplain development permit from the City to install the culvert as required by MCO Chapter 1446. Solid Rock notified the City of the issue on May 1, 2018. Upon discovering the culvert on BEI's property, Jordan Parker ("Parker"), the City's then assistant public works director, notified William Brock of the unauthorized culvert. Brock is the floodplain administrator, city manager, and city engineer for the City. On May 25, 2018, Parker sent BEI a letter instructing it to remove the culvert immediately because it was causing flooding issues for upstream properties, including Solid Rock's and Bishop's properties. BEI failed to remove the culvert in accordance with the City's instruction. Between May 2018 and December 2019, Solid Rock unsuccessfully complained to the City several times. Although the City served BEI with notices of violation and ordered the removal of the culvert during that same period of time, it was also working informally with BEI to resolve the issue. The City never informed Solid Rock and Bishop of its attempt to resolve the issue with BEI.

{¶ 6} On December 17, 2019, Solid Rock filed a complaint for a writ of mandamus to compel the City to enforce its flood regulations, have the culvert removed, and have the topography in and around the culvert restored to its preconstruction condition. The complaint alleged that BEI had altered the floodway by (1) removing vegetation in the floodway, (2) removing trees in the floodway, (3) constructing the culvert in the floodway, and (4) changing the banks of Shaker Creek in the floodway. Approximately a month after Solid Rock filed its complaint, the culvert was removed.

{¶ 7} In late February 2020, the City was notified that there were two large piles of ground fill and/or gravel ("debris piles") and semi-trailers parked in the floodplain on BEI's

property.[1] Upon visiting the site on March 2, 2020, Brock sent BEI a notice of violation ordering the removal of the debris piles within 30 days. The debris piles were removed by late March 2020. Brock verified that the debris piles had been removed by inspecting the site on March 24, 2020.

{¶ 8} On March 13, 2020, Solid Rock filed an amended complaint for a writ of mandamus, alleging that BEI had altered the floodway by (1) removing vegetation in the floodway, (2) removing trees in the floodway, (3) constructing the culvert in the floodway, (4) changing the banks of Shaker Creek in the floodway, (5) placing large piles of fill in the floodway, (6) parking semi-trailers in the floodway, (7) removing the culvert after the lawsuit was filed and failing to conduct a no-rise analysis to ensure compliance with applicable law, (8) making other changes to the floodway in violation of the law, and (9) engaging in other actions in violation of the law. The amended complaint sought a writ of mandamus to compel the City "to take all action necessary, including substantial fines, to ensure that the unpermitted installation of the culvert pipe in a FEMA Designated Floodway installed over Shaker Creek is immediately removed, [and] restoring the Floodway to its pre-construction condition with a No-Rise Certification being obtained." Solid Rock's and Bishop's properties experienced another flooding in May 2020.

{¶ 9} On August 24, 2020, Solid Rock provided the City with a 271-page Flood Impact Analysis Report authored by Matthew Gramza, a civil engineer and certified floodplain manager. The record indicates that on July 21, 2020, Gramza surveyed the relevant portion of Shaker Creek on BEI's property, including where the culvert was

---

1. The record is confusing as to when and how the City was notified of the two large debris piles located in the floodplain on BEI's property. Parker testified that he noticed the debris piles when he visited the site on January 8, 2020, to confirm the culvert had been removed. A week later, Parker returned to the site, took four photographs of the site, and texted them to Brock. He further orally notified Brock of the piles sometime in January 2020. Brock's affidavit states that he was notified of the debris piles on February 28, 2020. By contrast, he testified that Parker told him about the debris piles. He also testified he became aware of the debris piles while having a conversation with trial counsel for the City.

previously installed. Gramza's report stated that the installation of the culvert pipe in the floodway, the construction of an earthen berm along the banks of Shaker Creek on BEI's property, and the placement of limestone riprap in the creek on BEI's property obstructed the floodway and prevented floodwaters from accessing the natural floodplain, directly causing flooding on Solid Rock's and Bishop's properties.[2] The report recommended removal of the limestone riprap from the floodway and removal of cross-sections of the earthen berm.

{¶ 10} The City deposed Gramza on October 23, 2020. Thereafter, the City filed a motion in limine to exclude Gramza's testimony as not relevant to the issues raised in Solid Rock's amended complaint. Specifically, the City asserted that the amended complaint did not seek a writ of mandamus relating to the earthen berm and the limestone riprap in the floodway. Moreover, the culvert issue was moot as the culvert had been removed. The matter proceeded to a bench trial on November 23-24, 2020. The trial court heard testimony from Gramza, Brock, Bishop, Parker, and two other witnesses. As Gramza started to testify, the trial court interrupted him, referring to the City's motion in limine. The trial court advised the parties it was denying the motion "at this point in time" because the court had "no context with regard to [Solid Rock's] allegations and with regard to Mr. Gramza's testimony." The court further advised the parties it had not reviewed Gramza's report. Gramza subsequently testified without objections concerning the findings of his report, including those related to the earthen berm and limestone riprap.

{¶ 11} Following the parties' filing of written closing arguments, the trial court issued a decision on February 24, 2021. The trial court denied Solid Rock's request for a writ of

---

2. The record shows that there were large limestone boulders both in Shaker Creek and on its banks on BEI's property just downstream from where the culvert was installed. Those boulders were interchangeably referred to as "fill," "riprap," and "bank stabilization" throughout the proceedings. This opinion will generally refer to the boulders as limestone riprap.

mandamus regarding the culvert because it had been removed. However, the trial court granted the writ of mandamus regarding the earthen berm and the limestone riprap. The trial court ordered the City to issue violation notices to BEI requiring that it correct the limestone riprap violation to comply with MCO Chapter 1446 and modify the earthen berm in compliance with MCO Chapter 1446.

{¶ 12} The City now appeals, raising three assignments of error. The City's second and third assignments of error will be addressed together.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT [APPELLEES] WERE ENTITLED TO A WRIT OF MANDAMUS FOR RELIEF NOT PRAYED FOR IN THEIR COMPLAINT.

{¶ 15} The City generally challenges the trial court's decision granting Solid Rock a writ of mandamus, presenting two issues for review.

<u>The Adequacy of Solid Rock's Complaints</u>

{¶ 16} In its first issue for review, the City argues that the trial court abused its discretion in allowing the writ of mandamus regarding the earthen berm and limestone riprap because neither were prayed for in Solid Rock's amended complaint. The City asserts that Solid Rock first sought relief relating to the earthen berm and limestone riprap in its October 28, 2020 final pretrial statement and never sought to amend its complaint pursuant to Civ.R. 15(B). Solid Rock maintains that its amended complaint satisfies the notice-pleading requirements of Civ.R. 8(A). Solid Rock further states that its amended complaint must "be construed as to do substantial justice" pursuant to Civ.R. 8(F).

{¶ 17} Civ.R. 8(A) provides that a complaint must contain "(1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Civ.R. 8(A) applies to a

complaint in mandamus. *See State ex rel. Millington v. Weir*, 60 Ohio App.2d 348, 350 (10th Dist.1978). "Civ.R. 8(A) requires only that a pleading contain a short and plain statement of the circumstances entitling the party to relief." *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 526, 1994-Ohio-99. Civ.R. 8(F) requires that pleadings be construed as to do substantial justice and to that end, must be construed liberally to serve the substantive merits of the action. *MacDonald v. Bernard*, 1 Ohio St. 3d 85, 86 (1982), fn. 1; *E.I. du Pont de Nemours & Co. v. Cincinnati Printers Co., Inc.*, 12th Dist. Butler No. CA2008-12-307, 2010-Ohio-1631, ¶ 8.

{¶ 18} Solid Rock's original complaint included allegations that BEI had altered the floodway by removing trees and vegetation in the floodway and changing the banks of Shaker Creek in the floodway. Solid Rock sought to compel the City to enforce its flood regulations, have the culvert removed, and have the topography in and around the culvert restored to its preconstruction condition. Solid Rock's March 13, 2020 amended complaint likewise alleged that BEI had altered the floodway by (1) removing trees and vegetation in the floodway, (2) constructing the culvert in the floodway and then removing it without conducting a no-rise analysis to ensure compliance with applicable law, (3) changing the banks of Shaker Creek in the floodway, (4) placing large piles of fill in the floodway, (5) making other changes to the floodway in violation of the law, and (6) engaging in other actions in violation of the law. The amended complaint sought a writ of mandamus to compel the City "to take all action necessary, including substantial fines, to ensure that the unpermitted installation of the culvert pipe in a FEMA Designated Floodway installed over Shaker Creek is immediately removed, [and] restoring the Floodway to its pre-construction condition." The City never sought a more definite statement of Solid Rock's allegations under Civ.R. 12(E).

{¶ 19} Between the filing of Solid Rock's original and amended complaints, the City

filed a Civ.R. 12(C) motion for judgment on the pleadings, arguing only that Solid Rock's mandamus action was moot because the culvert had been removed. Solid Rock responded on February 21, 2020, asserting that its mandamus action was not moot and that the City's motion should be denied because "the culvert is only one part of the case." Solid Rock then referenced allegations in its complaint that it was entitled to a writ of mandamus to compel the City to enforce its flood regulations because BEI had changed the banks of Shaker Creek, including by grading, and had made changes in the floodway without a permit. The City filed a reply on February 28, 2020, repeating its mootness argument and generally asserting that Solid Rock did not know when trees and vegetation were removed from the floodway. After Solid Rock filed its amended complaint on March 13, 2020, the trial court denied the City's motion for judgment on the pleadings. At no time in its argument supporting its motion for judgment on the pleadings or thereafter did the City seek dismissal of Solid Rock's complaints or another remedy on the ground Solid Rock was seeking relief for unpled matters. Although the City filed a motion in limine to exclude Gramza's testimony regarding Solid Rock's earthen berm and limestone riprap claims, it never sought to exclude those claims as having not been pled in the complaints. Instead, the City continued to defend against those claims.

{¶ 20} During discovery, it was apparent that in addition to the culvert and the debris piles, Solid Rock was also complaining about the earthen berm and the limestone riprap. Both were the subject of Solid Rock's deposition of Brock on August 17, 2020. Brock was specifically questioned regarding the earthen berm and limestone riprap during his deposition. Moreover, Solid Rock's and Bishop's May 2020 responses to the City's interrogatories both identified that "a *bank wall* has been constructed on the west side of Shaker Creek in the Floodway to prevent water from going into agricultural fields. *Large boulders* have been placed in the Floodway. These encroachments change the natural

water flow in the Floodway."  Gramza's report, provided to the City in August 2020, and Gramza's deposition also concerned the earthen berm and limestone riprap. Finally, Solid Rock's final pretrial statement, filed approximately a month prior to the trial, identified the earthen berm and fill placed in and above the Shaker Creek's bank as violations of MCO Chapter 1446.

{¶ 21} Solid Rock's original and amended complaints both alleged that BEI had violated the City's flood regulations – MCO Chapter 1446 – by altering the banks of Shaker Creek and by making changes to the floodway, including by placing fill and semi-trailers in it.  While neither complaint specifically referred to the earthen berm and limestone riprap, their general allegations above are broad enough to encompass the earthen berm and limestone riprap.  *See* Civ.R. 8.  Based upon Solid Rock's and Bishop's May 2020 responses to the City's interrogatories, Brock's August 2020 deposition, Gramza's deposition and report, and Solid Rock's final pretrial statement, the City was aware that Solid Rock was seeking relief related to the earthen berm and limestone riprap.  Yet, the City never sought to exclude those claims on the basis it now asserts on appeal.  Instead, the City continued with the litigation.  We therefore find no merit to the City's first issue.

The Admissibility of Gramza's Testimony

{¶ 22} In its second issue for review, the City argues that the trial court erred in denying its motion in limine to exclude Gramza's testimony.

{¶ 23} A motion in limine is a motion directed to the inherent discretion of the trial court to prevent the injection of prejudicial, irrelevant, inadmissible matters into trial.  *State v. Grubb*, 28 Ohio St.3d 199, 200-201 (1986).  A trial court's grant or denial of a motion in limine is a tentative, preliminary, or presumptive ruling about an evidentiary issue that is anticipated but has not yet been presented in its full context.  *Id.* at 203.  A trial court's ruling on a motion in limine does not preserve the record on appeal.  *State v. Maurer*, 15 Ohio

St.3d 239, 259 (1984), fn. 14. Instead, any claimed error regarding a trial court's decision on a motion in limine must be preserved at trial by an objection, proffer, or ruling on the record when the issue is actually reached and the context is developed. *Grubb* at 201; *Barker v. Glen Meadows Nursing Home*, 12th Dist. Butler No. CA2008-06-145, 2009-Ohio-2626, ¶ 14. The failure to object to evidence at the trial constitutes a waiver of any challenge, regardless of the disposition made on a preliminary motion in limine. *Grubb* at 203; *Wilhoite v. Kast*, 12th Dist. Warren No. CA2001-01-001, 2001 Ohio App. LEXIS 5996, *24-25 (Dec. 31, 2001).

{¶ 24} The trial court tentatively denied the City's motion in limine at the outset of Gramza's testimony because the evidentiary issue had not yet been presented in its full context. Subsequently, the City did not object to Gramza's testimony or move to strike it after its context became clear, thereby failing to preserve the issue for appeal. Because the City failed to preserve the claimed error at trial, we need not review the propriety of the trial court's denial of the motion in limine. *Grubb* at 203; *Barker* at ¶ 14.

{¶ 25} The City's first assignment of error is overruled.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT'S DETERMINATION THAT THE FLOODPLAIN ADMINISTRATOR ABUSED ITS DISCRETION IN FINDING THAT THERE WAS NO VIOLATION WAS UNREASONABLE, ARBITRARY, AND/OR UNCONSCIONABLE.

{¶ 28} Assignment of Error No. 3:

{¶ 29} THE TRIAL COURT ABUSED ITS DISCRETION FINDING THE EARTHEN BERM WAS AN UNAUTHORIZED USE AND ORDERING A WRIT OF MANDAMUS COMPELLING THE CITY TO ISSUE A NOTICE OF VIOLATION REQUIRING THE EARTHEN BERM BE MODIFIED TO BE IN COMPLIANCE WITH THE CITY'S ORDINANCES.

{¶ 30} In these assignments of error, the City argues that the trial court abused its discretion in granting Solid Rock a writ of mandamus compelling the City to issue violation notices to BEI regarding the limestone riprap and the earthen berm.

Mandamus

{¶ 31} A writ of mandamus is an order to compel the performance of an act which the law specifically requires to be performed as a duty resulting from an office, trust, or station. R.C. 2731.01. Before a court can grant a writ of mandamus, the relator must show (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to perform the requested act, and (3) the lack of a plain and adequate remedy at law. *State ex rel. Hodges v. Taft*, 64 Ohio St.3d 1, 6 (1992). The relator must prove entitlement to the writ by clear and convincing evidence, which is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, ¶ 54, 57. The facts submitted and the proof must be plain, clear, and convincing before a writ will be granted. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 161 (1967).

{¶ 32} In considering the allowance or denial of a writ of mandamus on the merits, a court "will exercise sound, legal and judicial discretion based upon all the facts and circumstances in the individual case and the justice to be done." *Id.* at paragraph seven of the syllabus. An appellate court reviews a trial court's grant or denial of a writ of mandamus under an abuse-of-discretion standard. *State ex rel. Foster v. Brown Cty. Health Dept.*, 12th Dist. Brown No. CA2016-12-025, 2017-Ohio-8430, ¶ 27. An abuse of discretion is more than an error of judgment; it means the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Id.*

{¶ 33} A writ of mandamus "cannot be used to control the exercise of administrative or legislative discretion," but "it can be issued to compel [an officer] to exercise it when he has a clear legal duty to do so." *State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247, 249, 1997-Ohio-274; *Hodges*, 64 Ohio St.3d at 4; *Mootispaw v. Eckstein*, 12th Dist. Fayette No. CA96-02-004, 1996 Ohio App. LEXIS 1080, *3 (Mar. 25, 1996). Moreover, "[w]hile a court will apply the spur of mandamus to compel performance of a clear legal duty, it will not, after the discretion has been exercised, interfere therewith, unless an abuse thereof is clearly shown." *State ex rel. Foster v. Miller*, 136 Ohio St. 295, 304 (1940).

## MCO Chapter 1446

{¶ 34} The trial court found that the limestone riprap and the earthen berm both violated MCO Chapter 1446. As pertinent to this appeal, MCO 1446.12(b) governs Brock's duties and responsibilities as the City's floodplain administrator and provides:

> The duties and responsibilities of the floodplain administrator shall include but are not limited to: Issue permits to develop in special flood hazard areas when the provisions of this chapter have been met, or refuse to issue the same in the event of noncompliance; Inspect buildings and lands to determine whether any violations of this chapter have been committed; [and] Enforce the provisions of this chapter.

MCO 1446.12(b)(3), (4), and (6).

{¶ 35} MCO 1446.13 provides that

> It shall be unlawful for any person to begin construction or other development activity including but not limited to filling; grading; construction; alteration, remodeling, or expanding any structure; or alteration of any watercourse wholly within, partially within or in contact with any identified special flood hazard area, as established in section 1446.06, until a floodplain development permit is obtained from the floodplain administrator. Such floodplain development permit shall show that the proposed development activity is in conformity with the provisions of this chapter. No such permit shall be issued by the floodplain administrator until the requirement of this chapter have been

met.

{¶ 36} MCO 1446.29(a) governs enforcement, violations, and penalties and provides that

> (1) No structure or land shall hereafter be located, erected, constructed, reconstructed, repaired, extended, converted, enlarged or altered without full compliance with the terms of this chapter * * * , unless specifically exempted from filing for a development permit as stated in section 1446.14.
>
> (2) Failure to obtain a floodplain development permit shall be a violation of this chapter and shall be punishable in accordance with division (c) below of this section.
>
> (3) Floodplain development permits issued on the basis of plans and applications approved by the floodplain administrator authorize only the use, and arrangement, set forth in such approved plans and applications[.]  Use, arrangement, or construction contrary to that authorized shall be deemed a violation of this chapter and punishable in accordance with division (c) below of this section.

{¶ 37} "Whenever the floodplain administrator determines that there has been a violation of any provision of this chapter, he or she shall give notice of such violation to the person responsible therefore and order compliance with this chapter as hereinafter provided." MCO 1446.29(b).  Pursuant to MCO 1446.29(c),

> Violation of [MCO Chapter 1446] or failure to comply with any of its requirements shall be deemed to be a strict liability offense, and shall constitute a fourth degree misdemeanor.  Any person who violates this chapter or fails to comply with any of its requirements shall upon conviction thereof be fined or imprisoned as provided by the laws of the City of Monroe.  * * * Nothing herein contained shall prevent the City of Monroe from taking such other lawful action as is necessary to prevent or remedy any violation.  The City of Monroe shall prosecute any violation of this chapter in accordance with the penalties stated herein.

### The Limestone Riprap

{¶ 38} The City's second assignment of error relates to the trial court's allowance of

a writ of mandamus compelling the City to issue a violation notice to BEI for the limestone boulders placed in Shaker Creek and on its banks within the floodway on BEI's property. The record shows that the banks of Shaker Creek were stabilized with limestone riprap and that some of the riprap fell into the creek bed. The trial court found that the limestone riprap was a rock "fill," defined under MCO 1446.11 as "a deposit of earth material placed by artificial means," and that it had been placed along Shaker Creek without a floodplain development permit in violation of MCO 1446.13. The trial court further found, "As unauthorized fill remains in and on the banks of Shaker Creek, it is an abuse of discretion of the floodplain administrator's discretion to unilaterally determine that no violation has occurred. Therefore, the City is ordered to issue a notice of violation to BEI requiring that it correct the violation to comply with the ordinances."

{¶ 39} The City challenges the trial court's finding that Brock abused his discretion in unilaterally determining that the limestone riprap was not a violation under MCO Chapter 1446. The City argues this was error because as the City's floodplain administrator, Brock has discretion in fulfilling his duties and responsibilities under MCO 1446.12 and in determining whether there is a violation of MCO Chapter 1446, he did not abuse that discretion, and mandamus cannot be used to control the exercise of administrative discretion. Brock testified that the limestone riprap "could be a violation" but that it appeared it only needed to be "maintained and pulled back." Based upon that testimony and the lack of evidence as to when the limestone riprap was put into place and who installed it, the City asserts that Brock did not abuse his discretion in declining to issue a notice of violation to BEI and the trial court erred in allowing a writ of mandamus to control Brock's discretion.

{¶ 40} Gramza testified that the limestone riprap found in Shaker Creek and on its banks within the floodway on BEI's property, just downstream of the former culvert, was prohibited because it creates obstructions and reduces the amount of flood storage.

Gramza stated that the limestone riprap was plainly obvious upon observation. Gramza testified that the limestone riprap within the bed of Shaker Creek needed to be removed. By contrast, the limestone riprap used on the banks of the creek for stabilization purposes could remain but needed to be shored up, straightened up, and thinned out. Gramza testified he did not know when the bank stabilization occurred. We note that Solid Rock's Exhibit 4, which is included in Gramza's report, consists of five photographs from Google Earth Imagery taken between October 2015 and March 2019. The photographs show the area where the culvert was built as well as the area just downstream of the culvert. The photographs show that the culvert and the limestone riprap did not exist in October 2015, that the culvert was built by June 2016, and that the limestone riprap described at trial was put in place by March 2018 if not by June 2016.

{¶ 41} Parker testified that upon visiting BEI's property in early January 2020 to verify that the culvert had been removed, he noticed there was a lot of debris on the site, including fill within Shaker Creek itself. Parker returned to the site on January 14, 2020, took four photographs and texted them to Brock, and told Brock the fill needed to be removed from the creek and the creek needed to be restabilized. Parker testified that when dealing with a blue-line stream such as Shaker Creek, it is important to restore the creek to its preconstruction condition, if not better.[3]

{¶ 42} Brock testified that although he became aware of the existence of the culvert on BEI's property and flooding issues on Solid Rock's and Bishop's properties in 2018, he never visited the latter properties in 2018, 2019, or 2020. Despite Solid Rock's numerous complaints beginning in 2018, Brock did not visit BEI's property until March 2020, three

---

3. Gramza testified that a blue-line stream is a stream identified as having flow full time or for the majority of the year. It is a jurisdictional water of the United States and is identified on USGS topography lines with either a blue solid line or a blue dash, broken line.

months after Solid Rock had filed its original complaint and two months after the culvert had been removed. Brock's visit was prompted by the debris piles left on the site following the removal of the culvert. Brock went back to BEI's property on March 24, 2020, to verify the debris piles had been removed as ordered. Brock's testimony indicates that his March 2020 visits were solely confined to the debris piles and did not involve further or broader inspection of BEI's property. Brock testified he has never conducted a full inspection of BEI's property. Furthermore, he has never specifically inspected the property to determine whether it complies with MCO Chapter 1446. At trial, Brock admitted that the limestone riprap was not placed correctly, that it could be a violation, and that it should be maintained and pulled back as recommended by Gramza. The record indicates that Brock has never officially determined whether the limestone riprap violates MCO Chapter 1446.

{¶ 43} MCO 1446.13 prohibits development activity such as filling as well as "alteration of any watercourse wholly within * * * any identified special flood hazard area, as established in section 1446.06, until a floodplain development permit is obtained from the floodplain administrator." The trial court properly found the limestone riprap to be fill under MCO 1446.11, that is, a "deposit of earth materials placed by artificial means." For purposes of MCO Chapter 1446, "a watercourse is altered when any change occurs within its banks." MCO 1446.27(c). MCO 1446.29(a)(2) further provides that "[f]ailure to obtain a floodplain development permit shall be a violation of this chapter[.]" Solid Rock presented clear and convincing evidence that the limestone riprap was put in place within the floodway on BEI's property and that it was installed without a floodplain development permit.

### The Earthen Berm

{¶ 44} The City's third assignment of error relates to the trial court's allowance of a writ of mandamus compelling the City to issue a violation notice to BEI regarding the earthen berm constructed in the floodway on BEI's property without a floodplain development

permit.

{¶ 45} The trial court found that the earthen berm on BEI's property "was never authorized as a FEMA-approved structure in the floodway" and has never been approved by the City. Describing the earthen berm as being 3,100 feet long, 40 feet wide, and with an average height of 7.5 feet and a maximum height of 8.5 feet, the trial court found that the berm cuts off 80 percent of the floodway and 56 acres of floodway storage and causes Shaker Creek to back up and flood upstream properties, including Solid Rock's property. The trial court rejected the City's argument that a development permit was not needed because the City had no knowledge of it being built as there was no evidence regarding when the earthen berm was built or who put it in place:

> [T]he Court finds that the City's argument is not in keeping with the spirit of Chapter 1446 as a whole. The fact remains that the unauthorized berm exists in the floodway and it is causing flooding for certain properties. Moreover, [MCO] 1446.29(a)(3) provides, in pertinent part, "Use, arrangement, or construction contrary to that authorized shall be deemed a violation of this chapter and punishable in accordance with division (c) below of this section."

> The plain language of the ordinance states that "use" contrary to what is authorized is also a violation. Whether or not BEI constructed the berm is of little consequence because the use of the berm on its property is an unauthorized use. For this reason, the City is ordered to issue a notice of violation to BEI requiring that the berm be modified to be in compliance with the ordinances.

{¶ 46} The City argues the trial court abused its discretion in finding that the earthen berm was an unauthorized use under MCO Chapter 1446 because there is no evidence regarding when the berm was constructed or who constructed it. Relying upon the language of MCO 1446.29(a)(1) that "[n]o structure or land shall *hereafter* be located, erected, constructed," the City asserts that Solid Rock's failure to establish that the earthen berm was constructed after MCO Chapter 1446 was enacted in 1991 is fatal to its claim. Relying

- 17 -

upon Gramza's testimony that the earthen berm was "not indicated as an [existing] structure" on the FEMA maps, the City further asserts the berm is not subject to MCO 1446.29(a)(1). We summarily reject this latter assertion because MCO 1446.29(a)(1) clearly applies to "land" and "development" in addition to "structure."[4]

{¶ 47} Gramza testified that the 3,100-foot-long earthen berm is man-made, runs along the north side of Shaker Creek on BEI's property, is entirely in the floodway, and disconnects the base flood discharge from connecting to the floodplain, thereby impacting upstream properties and creating additional flooding on Solid Rock's and Bishop's properties. On cross-examination, Gramza testified that his study was strictly focused on the flooding with culvert versus without culvert and not the impact of the earthen berm, and that the earthen berm itself has not caused "additional inundation in recent years." Gramza testified that this type of berm is typically constructed to protect agricultural fields from flooding. As stated above, agricultural fields on BEI's property border the north side of Shaker Creek which is where the earthen berm is. Gramza testified he did not know when the earthen berm was built; however, the berm was visible on a 1994 aerial photography.

{¶ 48} Gramza also testified that a floodplain administrator is required to administer the National Flood Insurance Program and is responsible for understanding what development has taken place in the floodplain and more critically in the floodway. Gramza testified that visual observations of impacts in the floodway and floodplain are very important

---

4. The trial court and Gramza both used the term "structure" while referring to the earthen berm. We construe their reference to "structure" as a colloquial use of the term, and not as it is defined under MCO Chapter 1446. As defined in MCO 1446.11, "structure" is a "walled and roofed building, manufactured home, or gas or liquid storage tank that is principally above ground." Clearly, the earthen berm is not a "structure" under MCO Chapter 1446. "Development" is defined by MCO 1446.11 as "[a]ny manmade change to improved or unimproved real estate, including but not limited to buildings or other structures, mining, dredging, filling, grading, paving, excavation or drilling operations or storage of equipment or materials." Although MCO 1446.29(a) does not include the term "development," it plainly refers to it by providing that no "land" may be "located, erected, constructed, reconstructed, repaired, extended, converted, enlarged or altered," except in compliance with MCO Chapter 1446. MCO 1446.11's definition of "violation" as the "failure of a structure or other development to be fully compliant with [MCO Chapter 1446]" supports our determination.

and that the earthen berm is visible on inspection.

{¶ 49} Brock is the City's floodplain administrator since September 1999. He testified that BEI already owned the property in 1999 and that it has continuously owned the property except for a short period of time in the early 2000s when the City purchased the property then sold it back to BEI. Brock testified that the earthen berm has been there as long as he can recall. Brock admitted he has not visited BEI's property and looked at the earthen berm. At trial, when asked whether the earthen berm was a violation of MCO Chapter 1446, Brock replied, "I don't believe so, no." The record indicates that Brock has never officially determined whether the earthen berm violates MCO Chapter 1446.

{¶ 50} Solid Rock presented clear and convincing evidence that the earthen berm has been in existence on BEI's property at least since 1994, that it is entirely within the floodway, that it is man-made, and that is was built without a floodplain development permit. MCO 1446.13 prohibits "alteration of any watercourse wholly within * * * any identified special flood hazard area, as established in section 1446.06, until a floodplain development permit is obtained from the floodplain administrator." MCO 1446.29(a) further provides that "no land shall be located, erected, constructed, reconstructed, repaired, extended, converted, enlarged or altered without full compliance with the terms of this chapter," that "[f]ailure to obtain a floodplain development permit shall be a violation of this chapter," and that "[u]se, arrangement, or construction contrary to that authorized shall be deemed a violation of this chapter[.]"

{¶ 51} Regarding the City's argument that the earthen berm is a permitted nonconforming use as existing prior to the enactment of MCO Chapter 1446, we note that MCO 1446.29(a)(3) specifically prohibits any "use" contrary to the floodplain development permit issued by the floodplain administrator. No floodplain development permit was issued for the earthen berm, thus its prospective "use" in diverting water from the agricultural fields

is not authorized. Furthermore, as stated above, the record indicates that the earthen berm existed in 1994, post-1991 enactment of MCO Chapter 1446, and that Brock knew of its existence since 1999 yet never inspected it. When asked on cross-examination whether the earthen berm was a violation of MCO Chapter 1446, Brock equivocally answered, "I don't believe so" but never indicated that the earthen berm was not a violation because it was a permitted nonconforming use. As the City's floodplain administrator, Brock was in a position to know and duty-bound to have known whether the earthen berm was a violation of MCO Chapter 1446 or a permitted nonconforming use.

Discussion

{¶ 52} While Brock has discretion in determining whether a violation of MCO Chapter 1446 exists, he has never officially determined whether the limestone riprap and earthen berm violate MCO Chapter 1446 and has therefore not exercised his discretion. Brock's testimony at trial, based solely upon viewing photographic evidence, that the limestone riprap "could be a violation" but that it only needed to be maintained and pulled back does not qualify as an official determination under MCO Chapter 1446. Nor does Brock's trial testimony that he did not believe the earthen berm was a violation constitute an official determination under MCO Chapter 1446.

{¶ 53} Furthermore, MCO 1446.12 plainly requires Brock to inspect the floodway specifically to determine whether any violations of MCO Chapter 1446 have been committed and to enforce MCO Chapter 1446. These duties do not involve the exercise of discretion and MCO 1446.12 does not condition their performance upon the occurrence of a flooding event; rather, they are duties Brock is specifically enjoined to perform under MCO Chapter 1446 as the floodplain administrator for the City. Brock generally testified he has never fully inspected BEI's property, including the earthen berm which has existed since he was hired as the City's floodplain administrator in 1999, to determine whether it complies

with MCO Chapter 1446. Furthermore, despite the discovery of the unauthorized culvert in the floodway on BEI's property, which Brock determined was a violation of MCO Chapter 1446, followed by BEI's subsequent placement of debris piles in the floodway without a floodplain development permit, Brock did not then inspect BEI's property to determine whether any further violations had been committed. "The function of mandamus is to compel the performance of a present existing duty as to which there is a default. [I]t contemplates the performance of an act which is incumbent on the respondent when the application of a writ is made." *State ex rel Home Care Pharmacy, Inc. v. Creasy*, 67 Ohio St.2d 342, 343-344 (1981). While "[a] writ cannot issue to control an officer's exercise of discretion, * * * it can be issued to compel him to exercise it when he has a clear legal duty to do so." *Hodges*, 64 Ohio St.3d at 4.

{¶ 54} Accordingly, we find no error in the trial court's allowance of a writ of mandamus compelling the City to issue violation notices to BEI regarding the earthen berm and limestone riprap. Solid Rock established it had a clear legal right and the City was under a clear legal duty to issue the violation notices to BEI. Furthermore, the record discloses that there is no plain and adequate remedy available to Solid Rock in the ordinary course of law.

{¶ 55} "To exclude resort to mandamus on the ground that the relator has another remedy, such remedy must be one that affords relief with reference to the matter in controversy, and is appropriate to the particular circumstance of the case. It must be available and effective, as well as full and complete." *State ex rel. Fostoria Daily Review Co. v. Fostoria Hosp. Assn.*, 3d Dist. Seneca No. 13-86-32, 1986 Ohio App. LEXIS 9441, *6 (Dec. 19, 1986); *State ex rel. Levin v. Schremp*, 73 Ohio St.3d 733, 735 (1995) (for there to be an adequate remedy at law, the remedy must be complete, beneficial, and speedy). "An action in mandamus will not lie * * * where the law affords another remedy specifically

securing the enforcement of a right or the correction of the wrongs complained of." *State ex rel. Phelps v. Gearhart*, 104 Ohio St. 422 (1922), paragraph one of the syllabus. "The statutory remedy must be equally as convenient, beneficial, and effective as the remedy afforded by mandamus and must in effect compel specific performance." *Fostoria* at *6. "The plain and adequate remedy provided by the statute must be a remedy which itself enforces the performance of a particular duty by the respondent." *Id.* at *7.

{¶ 56} MCO 1446.28 provides a plain and adequate remedy in the ordinary course of law in that "any person affected by any notice and order, or other official action of the floodplain administrator" may appeal "any order, requirement, decision or determination made by the floodplain administrator in the administration or enforcement of [MCO Chapter 1446]" to the City's Board of Zoning Appeals ("BZA"). MCO 1446.28(b) and (c). It further provides a right to appeal the BZA's decision to the common pleas court. MCO 1446.28(f). However, such remedy is not available to Solid Rock as Brock never officially determined whether the earthen berm and limestone riprap were violations of MCO Chapter 1446.

{¶ 57} The City nevertheless asserts that Solid Rock has an adequate remedy in the ordinary course of law by a civil action against BEI for trespass, and notes that in fact, Solid Rock has a pending action against BEI for damages. The City's assertion is meritless. "While mandamus may not ordinarily be employed as a substitute for an action at law to recover money, underlying public duties having their basis in law may be compelled by a writ of mandamus." *State ex rel. Levin v. Schremp*, 73 Ohio St.3d 733, 735 (1995). Solid Rock's mandamus action was not premised solely on trespass but was premised instead on Brock's duties as the City's floodplain administrator to inspect the floodway for potential possible violations, to issue notices of violation when appropriate, and to enforce the City's flood regulations under MCO Chapter 1446. A trespass action is not a plain and adequate remedy in the ordinary course of law that precludes issuance of a writ of mandamus if the

relator is being damaged not solely by the trespass, but also by a failure of public officers to perform official acts that they are under a clear legal duty to perform. *See State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 472, 1998-Ohio-329.

{¶ 58} The City's second and third assignments of error are overruled.

Conclusion

{¶ 59} Accordingly, we uphold the trial court's allowance of a writ of mandamus compelling the City to issue notices of violation to BEI regarding the earthen berm and limestone riprap. These notices of violation shall comply with MCO 1446.29(b) and shall be subject to review pursuant to MCO 1446.28, the section governing appeals by "[a]ny person affected by any notice and order * * * of the floodplain administrator." In so affirming, we find only that the trial court did not abuse its discretion by allowing the writ of mandamus. We are cognizant that an abuse-of-discretion review may accommodate a range of different results. Thus, neither the trial court's allowance of the writ of mandamus nor this court's opinion shall be construed as a substantive decision that the earthen berm and limestone riprap are violations under MCO Chapter 1446 so as to circumscribe the discretion of the BZA should an appeal be taken pursuant to MCO 1446.28(c) or that of the common pleas court should further appeal be taken pursuant to MCO 1446.28(f) and R.C. Chapter 2506.

{¶ 60} Judgment affirmed.

PIPER, P.J., and S. POWELL, JJ., concur.