[Cite as *State ex rel. Martin Marietta Materials, Inc. v. Trenton*, 2024-Ohio-6054.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

STATE OF OHIO EX REL. MARTIN : 
MARIETTA MATERIALS, INC., et al.,          CASE NO. CA2023-11-120

           :

    Relators,                                 O P I N I O N

           :                      12/30/2024

   - vs -                                      :

           :

CITY OF TRENTON, OHIO,

           :

    Respondent.

ORIGINAL ACTION IN MANDAMUS

Eastman & Smith Ltd., and Brian P. Barger and Matthew D. Harper, for relators.

Roetzel & Andress, LPA, and Jeremy S. Young and Nicholas J. Ziepfel, for respondent.

**M. POWELL, J.**

{¶ 1} This is an original action in mandamus in which relators, Martin Marietta Materials, Inc. and Martin Marietta Real Estate Investments, Inc. (collectively referred to as "Marietta"), seek a writ to compel the city of Trenton, Ohio to approve Marietta's site plan application for a limestone processing facility on its property or, in the alternative, to act upon the application.

### I. Facts and Procedural History

**{¶ 2}** Marietta produces crushed stone and sand and gravel for construction projects, ready-mix, and asphalt. Marietta owns two adjoining parcels of land (the "Property") within the city of Trenton (the "City"). Marietta intends to build a limestone processing facility on the Property. Pursuant to the City's zoning map, the Property is in the City's I-G General Industrial District. Section 1252.14(a) of the City's zoning code (the "Code") describes the intent of the I-G zoning district as follows:

> This district is established to create and protect areas for industries which require large sites and should be isolated from other land uses by virtue of their external effects such as heavy traffic generation, open storage of materials, bulk storage of dangerous chemicals and possible emission of noise, glare, dust, odor, smoke, or other offensive characteristics. This district is intended to create areas for the grouping of types of industries of this nature so as not to create a nuisance or potential danger to other surrounding land uses. Land to be placed in this district should have level topography, sufficient public utilities and major transportation facilities readily available. Adjacency to residential districts should be minimized.

**{¶ 3}** As of June 16, 2021, Section 1252.14(b)(2)(V) of the Code listed "Stone products processing and manufacturing" as a principal permitted use within the I-G zoning district. Thus, a limestone processing facility was a permitted use of the Property.[1]

**{¶ 4}** Chapter 1266 of the Code governs site plan review for nonresidential and multi-family uses, provides that site plan and construction drawings for new nonresidential uses must be reviewed by the City's planning commission, and allows the planning commission to require the modification of submitted plans.

**{¶ 5}** On June 16, 2021, Marietta submitted an application for site plan review

---

1. Marietta filed an application for its limestone processing facility on the Property on June 16, 2021. The next day, the City amended its Code to require a conditional use permit for a stone processing plant like the one proposed by Marietta. The Code was again amended in March 2024 to prohibit mineral extraction, mineral processing, and mineral storage within the City's I-G General Industrial District.

(the "Application") for its limestone processing facility on the Property. The Application described the proposed use of the Property as a processing facility of stone products and manufacturing. The Application included a grading plan, describing how the topography would be changed to accommodate the facility; a plot plan, depicting the location of the elements of the facility, the setbacks, and the like; a landscape plan; and a lighting plan. The Application also depicted three ponds and a parking lot. The plot and grading plans depicted a surge area and a portal to access an underground tunnel running the length of the Property.

{¶ 6} The Application did not include construction drawings as provided in Section 1266.01(a) of the Code. Prior to submitting the Application, both Marietta's project engineer and its legal counsel corresponded with William Jones, the City's Planning and Zoning Administrator, regarding the proposed use of the Property, the process to obtain approval, and the documents to attach to the Application. A June 4, 2021 email from the project engineer to Matthew McCoy, Marietta's regional land manager for Ohio, summarized a telephone call between the project engineer and Jones as follows:

> Per Bill, the process is as follows: Submit a Site Plan also known as a Plot Plan. Purpose of the plot plan is to make sure it meets zoning. He is mainly concerned about the use, setbacks, parking requirements, etc. . . .
>
> Plot plan is approved by staff, no engineering review. Once plot plan has been approved, you can submit construction drawings. They do not provide an official approval letter, however they will let us know that the Plot plan has been approved and we can proceed with construction drawings.
>
> We can submit the Plot plan and construction drawings at the same time, however if you do not meet the zoning requirements, you have spent a lot of money for nothing.

{¶ 7} On August 4, 2021, Jones provided 15 comments to Marietta's project engineer concerning the site plan and requested additional information. Specifically,

Jones requested a traffic impact study; a lighting plan that included photometrics and lighting details; additional details regarding the portal and surge areas; information regarding on-site utilities; the heights of the processing equipment, all buildings, and the stored materials prior to and after processing; information about the finish materials to be used on interior roads; additional information regarding fuel storage; "all details for storm water management"; "the specifications to be used for spill prevention and other safeguards"; clarification regarding the Application's statement that "there will be no steady state vibrations detectable without the use of instruments at or beyond the lot lines"; information regarding the proposed fencing; detailed plans regarding trash storage; and additional information concerning the ponds and the parking areas. The City's request for additional information did not include a demand that Marietta provide construction drawings.

{¶ 8} In response to the City's request for additional information, Marietta submitted a packet of information and documents to Jones on June 6, 2022. The supplemental submittal included a letter from Marietta's project engineer addressing the City's questions and comments; a traffic impact study; updated grading and plot plans; a plan for a proposed dumpster enclosure; an electrical site plan; a summary of diesel storage tank information; and a summary of the heights of the equipment and structures proposed at the site. The project engineer's letter informed the City that limestone would not be brought to the Property for processing. Rather, the limestone would be brought "to the surface of the Facility, from the underground mine, via conveyor system. The limestone will be processed and stockpiled on site and transported to the marketplace via truck."

{¶ 9} The City never responded to the June 6, 2022 supplemental submittal with additional comments or questions, or request for additional documents or information.

Instead, on July 25, 2022, the City's law director sent a letter to Marietta's legal counsel requesting that the Application be "resubmitted and meet the current City Zoning Code." The letter simply stated that the Application "failed to include sufficient detail to facilitate a meaningful review. Lastly, Martin Marietta took nearly one year to respond to the City's requests to supplement the Site Plan Application so to comply with the City Code."

{¶ 10} In September 2022, an informal meeting was held between McCoy, Jones, and the City's service director. The meeting did not specifically relate to Marietta's pending Application; however, there was discussion concerning whether Marietta intended to conduct mining operations on the Property. In his deposition, McCoy characterized the discussion as whether it was feasible for Marietta to mine on the Property and he responded affirmatively. By contrast, Jones testified in his deposition that the discussion led him to believe Marietta intended to conduct mining operations on the Property, which Jones considered a significant change to the Property's proposed use as a limestone processing facility as set forth in the Application. McCoy denied in deposition testimony that the Application seeks approval for mining and stated that had Jones "spoken with us at any time over the last three years, we could have clarified that."

{¶ 11} On June 16, 2023, Marietta's legal counsel sent a letter to the City's law director asking that "the City approve the Application as required by its ordinances and Ohio law," and rejecting the suggestion that the Application be withdrawn and resubmitted. Continuing, the letter stated:

> Martin Marietta has complied with the City's requests for further information, including information related to utilities, lighting, structure heights, surface water management, vibrations, spill prevention, parking, and fencing. Martin Marietta also obtained a traffic study in the time frame specified by the City. To date, Martin Marietta has received no further comments on its Application or the supplemental information supplied as requested by the City. Rather, Martin Marietta received your letter of July 25, 2022, which did not

contain any action on the Application, but instead asked Martin Marietta to withdraw and refile it. Again, Martin Marietta has no obligation to do so. Rather, the City is obligated to complete its review and issue a decision.

{¶ 12} The letter concluded, "If the City believes that additional information or modifications of the Application are required, please advise us of such requests for information or modifications so they may be addressed. If there are none, please also advise us." The City never replied to Marietta's June 16, 2023 letter, never placed the matter on the City's planning commission's agenda for consideration, and neither approved nor denied the Application.

{¶ 13} On November 10, 2023, Marietta filed this action for a writ of mandamus to compel the City to act upon the Application by approving or denying it. On January 9, 2024, the City filed an answer to the petition, conceding it had not yet acted on the Application and stating it was unable to do so until an engineering firm engaged by the City had evaluated Marietta's proposed use of the Property. On the same day the City's answer was filed, the City's law director engaged Verdantas, an engineering firm with experience in the environmental and engineering business, to review Marietta's submittals and address the public health and safety concerns implicated by the proposed use of the Property as a limestone processing facility and mine within the City. Upon reviewing the documents provided by the City—which, ostensibly, did not include the Application—Verdantas issued a March 25, 2024 report, in which it concluded, "[T]he materials reviewed are insufficient to permit a determination to be made as to whether the proposed facility will protect the public health and safety within the City of Trenton, as it relates to noise emissions, fugitive dust emissions, the potential for cave-ins, and groundwater impacts."

{¶ 14} On April 30, 2024, with leave from this court, Marietta filed a first amended

petition for a writ of mandamus to compel the City to approve the Application under the terms of the Code in effect on June 16, 2021, or alternatively, to act upon the Application by approving or denying it. The City filed an answer to the amended petition. The City asserted that the Application was incomplete and materially deficient because (1) Marietta failed to submit necessary and required information to the planning commission, and (2) the "planned 800-foot-deep mine" was not a permitted use under the Code. The City also asserted that Marietta completely changed the nature of its proposed use of the Property in September 2022 when it added a proposed mine, that such required the City to engage the engineering firm, and that the "City [was] taking appropriate action on the Application within a reasonable period of time and should be given a full and fair opportunity to evaluate the Application prior to approving or denying it."

## II. Analysis

### 1. Petition for a Writ of Mandamus

{¶ 15} A writ of mandamus is an order to compel the performance of an act which the law specifically requires to be performed as a duty resulting from an office, trust, or station. R.C. 2731.01; *State ex rel. Solid Rock Ministries Internatl. v. Monroe*, 2022-Ohio-431, ¶ 31 (12th Dist.). "A writ of mandamus is an extraordinary remedy that only applies in a limited set of circumstances." *Id.*

{¶ 16} To be entitled to a writ of mandamus, the relator must show (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to perform the requested act, and (3) the lack of a plain and adequate remedy at law. *Id.* The relator must prove entitlement to the writ by clear and convincing evidence, which is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or

conviction as to the facts sought to be established." *State ex rel. Doner v. Zody*, 2011-Ohio-6117, ¶ 54-57. The facts submitted and the proof must be plain, clear, and convincing before a writ will be granted. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 161 (1967).

{¶ 17} As stated above, Chapter 1266 of the Code governs site plan review for nonresidential uses. As pertinent here, Section 1266.01 provides that "the site plan and construction drawings for new nonresidential uses . . . and all major changes in the physical characteristics of such uses shall be reviewed by the Planning Commission for compliance with this Zoning Code, with other municipal laws, and with generally accepted engineering standards."

{¶ 18} Section 1266.02 sets forth the elements of a site plan review as follows:

> Site plan review shall be based on drawings and other assurances submitted by the applicant, showing sufficient detail to facilitate a meaningful review. Site plan review shall include, but not be limited to parking areas, interior traffic circulation, building locations, ingress/egress, landscaping, lighting, signage, location of waste removal and related screening, sidewalks and pedestrian ways, curbs, gutters, utilities, and storm water management systems. Site plan review shall at a minimum be sufficiently comprehensive to assure that the express requirements of this Zoning Code are being met and the public health and safety will be protected.

{¶ 19} Section 1266.03 invests the planning commission with authority and discretion to "require the modification of submitted plans and/or the construction of related on-site and off-site improvements . . . as necessary to bring the project into conformance with this Zoning Code or otherwise to protect the public health or safety from the negative impacts of the development." Finally, Section 1266.05 provides that "any decision of the Planning Commission under this chapter may be appealed to the Board of Zoning Appeals, but only if brought within 30 days after the decision is rendered. Failure to timely present such an appeal to the Board of Zoning Appeals shall bar further appeals to the

courts."

### 2. Mandamus to Compel the City to Approve the Application

**{¶ 20}** Marietta seeks a writ of mandamus to compel the City to approve the Application. Marietta is not entitled to the requested extraordinary relief. "Absent an abuse of discretion, mandamus cannot compel a public official to act in a certain way on a discretionary matter." *State ex rel. Husted v. Brunner*, 2009-Ohio-4805, ¶ 20. Stated otherwise, while the extraordinary remedy of mandamus will lie to compel a public official to perform a duty specifically enjoined by law (i.e., exercise their discretion concerning a mandated duty), it does not lie to control that public official's discretion. *State ex rel. Chappell v. Mahoning Cty. Coroner Office*, 2017-Ohio-881, ¶ 6 (7th Dist.), citing *Cleveland ex rel. Neelon v. Locher*, 25 Ohio St.2d 49, 51 (1971). *See also Solid Rock Ministries*, 2022-Ohio-431 at ¶ 33. The City's planning commission has not yet exercised its discretion to determine whether the Application should be approved and it would be inappropriate for this court to allow the writ and compel the planning commission to approve the Application. *See Husted* at ¶ 20. Therefore, we deny Marietta's first claim for relief. *Id.* at ¶ 21.

### 3. Mandamus to Compel the City to Act Upon the Application

**{¶ 21}** Marietta also seeks a writ of mandamus to compel the City to act upon the Application. It is undisputed that Marietta submitted its Application for consideration by the City's planning commission on June 16, 2021. The Application sought approval to use the Property as a limestone processing facility in the I-G zoning district in which the Property is located, a use that was permitted by the Code as of June 16, 2021. On August 4, 2021, the City provided 15 comments to Marietta concerning the site plan and requested additional information under each comment. Marietta responded to the City's request on June 6, 2022, addressing the City's questions and comments and providing

additional information and documents. Since June 6, 2022, the City has taken no further action on the Application, has never responded to the supplemental submittal with additional comments or questions, and has never requested specific additional documents or information despite Marietta's offer to provide such items upon advisement by the City. Likewise, the City's planning commission has never placed the matter on its agenda for consideration.

{¶ 22} The City now claims—after Marietta filed the petition for a writ of mandamus—that it has no clear legal duty to complete the site plan review and rule upon the Application because it is incomplete and deficient. Specifically, the City asserts that Marietta has failed to provide (1) a spill prevention and clean-up plan, (2) "the requested specifications for 'other safeguards,' including . . . safeguards relating to noise emission, fugitive dust emissions, potential cave-in risk, and potential groundwater impacts and contamination," (3) construction drawings, and (4) additional plot plan information, including mining operations. The City asserts that "based on the [current] facts, [the] Planning Commission would be within its discretion to deny the Application as incomplete and deficient, and on the basis that it proposes a use—mining—that is not a permitted use under the Code."

{¶ 23} Section 1266.01 of the Code plainly requires that construction drawings for nonresidential uses be submitted for review by the planning commission. The Application did not include construction drawings. In his deposition, McCoy testified that Jones told Marietta's project engineer that construction drawings were not required for the site plan review and that it would be a waste of money to prepare building designs for a site when the applicant does not know if the site plan will be approved as initially submitted. McCoy further testified that had the City requested construction drawings, they would have been provided. Jones avers in an affidavit that he "merely suggested that Martin Marietta

submit a plot plan for informal confirmation by my office that its proposed development meets zoning requirements before incurring the expense of preparing construction drawings to be submitted for potential approval by Planning Commission." The project manager's June 4, 2021 email to McCoy is consistent with Jones' averment. Jones further avers that a site plan application without construction drawings cannot be approved by the planning commission. However, Jones did not include Marietta's failure to provide construction drawings as a deficiency in his August 4, 2021 comments in response to the submitted Application, subsequently never advised Marietta that the lack of construction drawings rendered the Application incomplete and deficient, and never requested that Marietta provide such drawings. Likewise, the July 25, 2022 letter from the City's law director failed to so advise or require submission of the drawings.

{¶ 24} The City also claims that other requested information not provided by Marietta—specifications regarding noise emission, fugitive dust emissions, potential cave-in risks, and groundwater impact and contamination—is required under Section 1252.14(a) of the Code which provides that the I-G zoning district "is established to create and protect areas for industries which require large sites and should be isolated from other land uses by virtue of their external effects such as heavy traffic generation, open storage of materials, bulk storage of dangerous chemicals and possible emission of noise, glare, dust, odor, smoke, or other offensive characteristics." The City asserts it asked for this information when it provided comments on August 4, 2021, and requested Marietta to provide "the specifications to be used for spill prevention *and other safeguards*." (Emphasis added.) Marietta's failure to provide evaluations regarding noise emissions, fugitive dust emissions, potential cave-ins, and groundwater impacts were first highlighted in Verdantas' March 25, 2024 report—after Marietta had filed the petition for a writ of mandamus.

{¶ 25} Although the Code contains noise standards (Section 1264.06) and lists storm water management systems as an element of a site plan review (Section 1266.02), Chapter 1266 does not specifically require issues of noise, fugitive dust, and potential cave-ins to be addressed by a site plan application. Marietta's Application affirmatively stated that the proposed facility would not exceed Chapter 1264 noise standards, would meet national, regional, and local air quality standards, and would have spill prevention and other safeguards to allow for safe operations. The Application also addressed vibrations and described how it would control dust emission.

{¶ 26} The City blames its failure to act upon the Application on Marietta's failure to provide the information listed above and its September 2022 "bombshell admission" it intended to add a mine to the proposed use of the Property. However, while the City responded to the Application and promptly advised Marietta of the additional information and documents and clarification (e.g. vibrations assertion) it needed to proceed further, it did not do so after Marietta provided the supplemental submittal. The City never responded to the supplemental submittal and never advised Marietta of the additional information or modifications it required to complete its review of the Application, including after Marietta's June 16, 2023 letter offering to provide any additional necessary information. Instead, as Jones testified, the City "basically stopped" reviewing the "incomplete" Application because it did not include "everything" the City needed to review, including construction drawings. Jones further testified, "the application has not been closed. It's not progressed because we have never yet received any additional information that we can process." Consequently, the Application has remained pending since June 2022 during which time the City requested no additional information and failed to approve, approve with conditions, or deny the Application or schedule consideration of the Application on the planning commission's agenda. Much of the information the City

now claims is necessary and required for the planning commission to complete review of the Application was communicated to Marietta only in the context of this litigation.

{¶ 27} Although the City claims it was concerned about Marietta's intention to conduct mining operations on the Property based upon the September 2022 meeting with McCoy, we note that the supplemental submittal advised the City that the limestone would be conveyed to the surface of the facility, "from the underground mine, via conveyor system." Moreover, it was not until January 9, 2024—15 months after the meeting—and after Marietta had filed its petition for a writ of mandamus, that the City engaged Verdantas to review and comment on the Application.

{¶ 28} The Code requires the City to review and act upon site plan applications. The City attributes its failure or refusal to proceed further and act upon the Application on Marietta's failure to provide the City with additional information and documents that the City did not advise Marietta were necessary until it answered the petition for a writ of mandamus. While the City has discretion in the manner in which it responds and acts upon the Application, it may not avoid responsibility to respond at all—as it did after the supplemental submittal—and to complete its review of and act upon the Application. Members of the public have the right to assume that the City will comply with the Code and conduct its affairs in a business-like manner. The City has kept the Application in limbo since the June 6, 2022 supplemental submittal. The City cannot refuse to act or delay acting upon the pending Application indefinitely or for an unreasonable length of time.

{¶ 29} Based upon the foregoing, we find that Marietta has established a clear legal right and duty to have the City act upon the Application. We further find that Marietta lacks a plain and adequate remedy in the ordinary course of law. Although Section 1266.05 of the Code provides such plain and adequate legal remedy in that it allows an

applicant to appeal a decision of the City's planning commission to the Board of Zoning Appeals within 30 days of the decision, by failing or refusing to act upon the Application, the City is preventing Marietta from availing itself of this remedy.

### III. Conclusion

{¶ 30} Accordingly, we grant Marietta a writ of mandamus compelling the City to act upon the Application. We thereby issue a writ directing the City's planning commission to place consideration of the Application on its meeting agenda and to approve, approve with conditions, or deny the Application within 120 days of the journalization of the judgment entry herein.

{¶ 31} Writ granted as modified herein.

BYRNE, P.J., and HENDRICKSON, J., concur.